UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRYANT PASCO,

                Plaintiff,

   v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

                Defendant.

CASE NO. C16-5669-JCC-MAT

REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff Bryant Pasco proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends this matter be REMANDED for an award of benefits.[1]

---

[1] Plaintiff's Opening Brief does not comply with the Court's Scheduling Order in failing to begin the listing of alleged errors on page one. Nor does the brief comply with the Local Civil Rules in containing text, outside of footnotes, falling below twelve point or larger in size. LCR 10(e)(1). Counsel is cautioned

REPORT AND RECOMMENDATION
PAGE - 1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1980.[2] He completed the eleventh grade, did not obtain a GED, and has past relevant work as a construction concrete mucker. (AR 22, 34-35, 69-70.)

Plaintiff filed DIB and SSI applications in April 2012, alleging disability beginning December 1, 2008. (AR 289-304.) He remained insured for DIB through December 31, 2013 and, therefore, was required to establish disability on or prior to that "date last insured" (DLI) to receive DIB. 20 C.F.R. §§ 404.131, 404.321. His applications were denied initially and on reconsideration.

On September 19, 2014, ALJ Rudolph Murgo held a hearing, taking testimony from plaintiff, a medical expert, and a vocational expert (VE). (AR 29-76.) On October 23, 2014, the ALJ issued a decision finding plaintiff not disabled. (AR 12-23.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on May 25, 2016 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity (SGA) since the alleged onset date. Plaintiff earned more

---

that future filings must comply with the Court's orders and all applicable rules, and will be stricken if not compliant.

[2] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

than $36,000.00 in 2008 and only $920.00 after 2008. (*See* AR 14.) At hearing, plaintiff testified he has been working as a concrete mucker for the past six months. However, the work, sometimes three days a week, for eight and a half hours a day, earning eighteen dollars an hour, did not constitute SGA because it is intermittent.

At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's cognitive disorder, borderline intellectual functioning, affective disorder, and anxiety disorder severe. He found other symptoms and complaints identified in the record not severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal a listing.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to able to perform a full range of work at all exertional levels, but with the following nonexertional limitations: perform simple, routine tasks (consistent with SVP 1 or 2); can read at a level of a person with an eleventh grade education; can write printed letters, but not cursive; needs a calculator for adding and subtracting; and can have occasional public contact. With that assessment, the ALJ found plaintiff capable of performing his past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Finding plaintiff not disabled at step four, the ALJ did not reach a conclusion at step five. The ALJ did, however, note that the VE testified an individual with the same mental limitations as in the original hypothetical, but limited to medium work and only frequent handling

and fingering with the left hand, could not perform past relevant work, but could work as a drier attendant and salvage laborer.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in failing to find he met the requirements of Listing 12.05C at step three, erred in rejecting a State agency physician's opinion, and failed to properly consider his testimony and lay testimony. He requests remand for an award of benefits. The Commissioner responds to the step three argument, maintaining the only issue presented for review is whether this case should be remanded for further proceedings or reversed for an award of benefits. The Commissioner argues outstanding issues necessitate further administrative proceedings.

## Listing 12.05C

At step three, the ALJ considers whether one or more of a claimant's impairments meet or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan*

REPORT AND RECOMMENDATION
PAGE - 4

*v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original; citations omitted).

Plaintiff bears the burden of proof at step three. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A mere diagnosis does not suffice to establish disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). An impairment must have the findings shown in the listing, *id.*, and must meet all of the specified medical criteria, *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To satisfy Listing 12.05C (Intellectual disability), a claimant must satisfy the following three requirements:

> (1) Significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of impairment before age 22;
>
> (2) A valid verbal, performance, or full scale IQ score of 60 to 70; and
>
> (3) A physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C; *Kennedy v. Colvin*, 738 F.3d 1172, 1175-76 (9th Cir. 2013). *But see supra* n. 3 (describing new Listing 12.05 requirements).

The record in this case contained IQ scores falling between 60 and 70 from psychologist Dr. Todd Bowerly in July 2012 and psychologist Dr. Scott Alvord in May 2014. (AR 477 (full scale IQ 67, verbal score 80, perceptual reasoning index score 69, working memory score 69, and processing speed score 62); AR 587 (full scale IQ 68, verbal score 80, reasoning index score 74, working memory score 69, and processing speed score 63).) Plaintiff also has additional severe impairments of affective disorder and anxiety. (AR 14, 17.)

The ALJ acknowledged plaintiff's additional severe impairments and the qualifying IQ scores, but concluded plaintiff did not meet listing 12.05C. (AR 18.) He noted Dr. Bowerly's

REPORT AND RECOMMENDATION
PAGE - 5

observation of "significant motivation and effort problems with all tests administered[,]" and that Dr. Alvord "believed all test scores were valid," but that plaintiff's "adaptive abilities showed greater functioning than the test scores revealed." (*Id.*) While finding the IQ scores valid, medical expert Dr. Stephen Rubin testified plaintiff "does not display current adaptive limitations, as he could shop, drive, handle daily activities, care for children, and find work." (*Id.*) The ALJ found plaintiff did not have a "valid" verbal, performance, or full scale IQ between 60 and 70. (AR 17.)

The ALJ found the record unclear in relation to plaintiff's childhood adaptive functioning. (AR 18.) He pointed to school records from the third and fourth grade, dated from 1988 to 1990, as showing plaintiff had "'issues'" at school, was in a regular fourth grade classroom with some help from a resource room, and was reported by his mother to be progressing. (AR 18-19 (citing AR 506-30).) Plaintiff also had a significant problem with migraine headaches, for which he took phenobarbital and which improved during summer vacation. The ALJ reasoned: "While these records show some difficulties in school, the evidence does not specify significant adaptive deficits caused by a cognitive impairment. It does not resolve whether headaches – instead of intellectual deficits – caused the claimant's school-related difficulties." (AR 19.)

Plaintiff here avers satisfaction of all three requirements of Listing 12.05C and requests an award of benefits. The Commissioner asserts the need for reevaluation of the evidence of plaintiff's education and work history, and further development of the record to consider the possibility a deficit of adaptive functioning manifested before age 22.[3] The Court, as discussed

---

[3] In recent revisions to the listings for mental disorders, effective January 17, 2017, the Social Security Administration (SSA) removed paragraph C from Listing 12.05. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016). Revised Listing 12.05B requires: (1) either a full scale IQ of 70 or below or a full scale IQ of 71-75 with a verbal or performance IQ of 70 or below; (2) significant deficits in adaptive functioning "currently manifested" by extreme limitation of one or marked limitation of two areas of mental functioning; and (3) evidence about "current intellectual and adaptive functioning" and the history of the disorder demonstrates or supports the conclusion it began prior

REPORT AND RECOMMENDATION
PAGE - 6

below, finds substantial evidence support in the existing record to conclude plaintiff meets all three requirements of Listing 12.05C.

A.      IQ Scores and Additional Severe Impairments

Dr. Alvord considered Dr. Bowerly's observations regarding test performance and variable effort, but found it noteworthy that he found consistent IQ scores on examination, which gave him the impression plaintiff "did give adequate effort during his first examination with Dr. Bowerly." (AR 587.) Testifying medical expert Dr. Rubin found the IQ scores from both examinations valid. (AR 65-67.) The ALJ afforded little weight to Dr. Alvord's impression regarding Dr. Bowerly's scores, gave significant weight to Dr. Alvord's testing, but only some weight to his opinion, gave greater weight to the opinions of Drs. Bowerly and Rubin, and otherwise focused on all three physicians' consideration of plaintiff's current functioning. (AR 17-18.)

Plaintiff alleged and the Commissioner did not dispute errors in the ALJ's consideration of the IQ test evidence. The Court, considering both the absence of any response from the Commissioner and its own review of the evidence, concludes the ALJ erred in finding plaintiff does not have a valid verbal, performance, or full scale IQ of 60 to 70. The ALJ also found Dr. Alvord's conclusion that plaintiff's adaptive ability is at the borderline level and not at the level of mental retardation, now properly referred to as intellectual disability, to suggest plaintiff does not meet Listing 12.05C. (AR 18.) As plaintiff observes, Listing 12.05C does not require a diagnosis of intellectual disability. *Pedro v. Astrue*, 849 F. Supp. 2d 1006, 1010 (D. Or. 2011);

---

to age 22. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05B. *See also* Listing 12.00H(1). In her responsive brief, the Commissioner stated further administrative proceedings would include reassessment of whether plaintiff meets or equals either Listing 12.05C or revised Listing 12.05. When prompted by the Court to clarify which listing would be applied if the Court remanded for further proceedings, the Commissioner stated her intention to consider plaintiff's claim in relation to each listing and to grant the claim if it satisfied either former Listing 12.05C or amended Listing 12.05. (Dkt. 18.) The Court herein proceeds in a similar manner, beginning with 12.05C, the listing considered by the ALJ.

*Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1057-58 (C.D. Cal. 2010). There is further no dispute plaintiff has additional severe impairments of affective disorder and anxiety. Plaintiff, as such, meets the second and third prongs of Listing 12.05C.

B. <u>Adaptive Functioning Deficits</u>

The first prong of Listing 12.05C refers to adaptive functioning deficits initially manifested before age 22, and does not require consideration of plaintiff's current adaptive functioning. *Evans v. Colvin*, C13-5436-RAJ-MAT (Dkt. 27 at 8-10 (citing cases finding same) and Dkt. 30 at 1 n.1 (citing *Kennedy*, 738 F.3d at 1176) (W.D. Wash., Report & Recommendation dated Jan. 30, 2014 and Order of Remand dated Jun. 18, 2014). Moreover, "[e]vidence <u>from</u> the developmental period is not required in order to establish that the impairment began before the end of the developmental period; rather, the agency may use its judgment when current evidence allows it to infer when the impairment began." *Hernandez v. Astrue*, No. 08-17511, 2010 U.S. App. LEXIS 10985 at *2-3 (9th Cir. May 28, 2010) (emphasis in original; citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01, 50753 (Aug. 21, 2000) (interpreting Listing 12.05)); *accord Evans*, C13-5436-RAJ-MAT (Dkt. 30 at 1, n.1). There must be evidence permitting an interference the impairment existed before age 22 and "is not of recent origin due to a traumatic event or some other changed circumstance." *Gomez*, 695 F. Supp. 2d at 1051 (citing *Markle v. Barnhart*, 324 F.3d 182, 188-89 (3d Cir. 2003)).[4]

---

[4] Several circuits have gone farther than the Ninth Circuit in *Hernandez*. Recognizing that IQ remains fairly constant throughout life, those courts found a rebuttable presumption a claimant's developmental IQ was the same as their current IQ when they present a valid IQ score from their post-developmental period. *See e.g., Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001); *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986) (per curiam); *Luckey v. U.S. Dep. of Health & Human Srvs.*, 890 F.2d 666, 668-69 (4th Cir. 1989). *But see Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (upholding finding that claimant did not meet or equal listing in part because IQ testing was not contemporaneous with her developmental period); *Markle*, 324 F.3d at 188-89 (declining to create a presumption). The Eleventh Circuit concluded claimants presumptively meet 12.05C when they present a valid IQ score and evidence

At hearing, plaintiff testified he stopped going to school in or after the eleventh grade and did not earn a GED; he can read, but cannot comprehend; he cannot write legibly or in cursive; he cannot do basic math, and uses his fingers to count. (AR 35-36.) Plaintiff repeatedly failed his driver's license test at ages 17 or 18, only passing on his sixth attempt after being allowed to listen to the test questions with headphones. (AR 58-59.) Plaintiff explained that his concrete mucking work, performed on and off since the age of thirteen, consists solely of his mucking, moving, and smoothing out concrete after it is poured; that he is frequently yelled at and called "stupid" on the job because he cannot measure things correctly and has difficulty counting his hours and entering job codes; that he sometimes calls his wife for assistance calculating his hours worked; and that he has worked for almost every concrete company in his county, but had been fired, laid off, or walked off job sites due to his attitude and other difficulties on the job. (AR 38-40, 54-57.)

The medical record reflects plaintiff's similar reporting and provides other support for his testimony as to his deficits. (*See, e.g.*, AR 419-21 (April 2011: plaintiff reported a learning problem, poor comprehension and memory, multiple attempts to obtain a driver's license, difficulty reading, writing, spelling, and writing his name, that he attended "special education all of his school life" and "couldn't learn the work, like math and spelling."; on testing, plaintiff was able to add "3 + 4", but was unable to answer multiplication or subtraction questions); AR 485-88 (November 2012: "He has only worked in the concrete mixing business and he is telling me he has

---

of an additional impairment. *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001). These cases recognize that the requirement of an intellectual disability arising before age 22 "seems intended to limit coverage to an innate condition rather than a condition resulting from a disease or accident in adulthood." *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007) (citations omitted). The Western District of Washington has, in some cases, followed this line of reasoning. *See, e.g., Cauffman v. Astrue*, No. C10-281-JCC-JPD, 2010 U.S. Dist. LEXIS 138257 at *23-25 (W.D. Wash. Nov. 12, 2010) (claimant's IQ score of 70 or below creates a rebuttable presumption that subaverage intellectual functioning existed during the developmental period), *adopted by* 2010 U.S. Dist. LEXIS 138240 (Dec. 30, 2010).

a difficult time keeping a job because he cannot use a measuring tape, he cannot read a blueprint, and he has a difficult time reading."; on testing, it took plaintiff three minutes to add "32 + 64", he was not able to multiply "9 x 6", or subtract "99 - 13", and he was unable read a measuring tape); AR 560 (April 2011: "he [cannot] comprehend stuff very well; [cannot] study".); AR 566 (February 2011: "He has poor memory. Doesn't know how to use computer. He has a learning disability, was in special ed in school[.]"; "Has trouble reading and writing."); AR 587-88 (Dr. Alvord, in May 2014: "He struggled in school. . . . . He provided a number of detailed descriptions to this author of not being able to calculate his time sheets, struggling to utilizing [sic] a tape measure and snap line, failing to remember simple work procedures, etc."); and AR 319, 430 (reporting special education classes).) (*But see* AR 474 (with Dr. Bowerly, in July 2012, plaintiff blamed his learning problems on his use of phenobarbital for headaches at age 7 or 8, reported he had not worked full-time for the past three years due to the poor economy and was not currently looking for work because his wife was working and they cannot afford daycare, and that he received "special education services 'in everything'").)

Plaintiff alleges error in the ALJ's assessment of his testimony and the lay testimony of his mother. The ALJ found plaintiff's testimony inconsistent with his daily activities and noted his statements as to other, non-medical reasons for his lack of employment. (AR 20 (noting plaintiff working part-time as a concrete mucker, can drive, shop, maintain his hygiene, and handle various chores, such as doing the dishes, vacuuming occasionally, and putting laundry in the washer, goes fishing with his brother, ride four-wheelers, and attended church until his daughter became unwelcome there; when not working, plaintiff serves as the primary caregiver for three children; also noting plaintiff's report the poor economy kept him from working, that he had found some side jobs with his uncle, and that he was not working because the family could not afford daycare).)

REPORT AND RECOMMENDATION
PAGE - 10

The ALJ proceeded to describe various medical records and opinions, afforded only some weight to plaintiff's mother's testimony, and concluded no greater or additional limitations beyond that assessed in the RFC were justified. (AR 20-22.) The Commissioner does not counter plaintiff's assertion of error. The Court, considering the absence of any dispute as to the alleged errors, and on its own review, finds the ALJ's assessment of the testimony deficient.

The Court also finds additional, significant evidence supporting the onset of plaintiff's deficits in functioning prior to age 22. Documents from the developmental period reflect plaintiff's history of "school difficulty," "doing poorly," and use of a "resource room." (AR 499, 506, 527.) In the same document in which his mother reported his progress and placement in a regular fourth grade classroom, with the use of a resource room, it was noted plaintiff "*was in special ed[.]" (AR 506.) Another document, dated in September 1988, states: "He exhibits extreme perceptual/motor deficits and a difference in his verbal and performance scores of <u>64 points</u>. There are sub-tests that place him in a range of mild retardation although [this] of course is <u>not</u> the case." (AR 528 (emphasis in original).) An October 1988 letter states plaintiff "appears to have a learning disability that most likely needs further evaluation through the school", and that, depending on the result, "he may need to be placed in special education classes." (AR 527.) Considering this evidence, and the remainder of the record, the Court finds little to support the ALJ's suggestion that plaintiff's childhood headaches, rather than his intellectual deficits, caused his difficulties in school. Nor does the record contain evidence supporting a conclusion plaintiff's deficits were of recent origin, such as through some traumatic event, or the result of a deterioration in functioning over time.

Considering plaintiff's two valid, consistent IQ scores, the record as a whole, including the evidence from the developmental period, and the absence of any evidence suggesting either a

REPORT AND RECOMMENDATION
PAGE - 11

relevant traumatic event or a deterioration in intellectual functioning, the Court finds substantial evidence support for a determination of significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22. *See, e.g.*, *Hernandez*, 2010 U.S. App. LEXIS 10985 at *3 (noting evidence from which ALJ could conclude plaintiff met listing as including that the claimant "repeated fourth grade, received poor grades in school, and did not attend high school[,]" and the absence of evidence her cognitive functioning had deteriorated over time); *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (ALJ erred in finding intellectual disability did not manifest itself before age 22 where claimant attended special education classes, dropped out of school in ninth grade, had "trouble with reading, writing, and math," and had frequent fights with other children"). Plaintiff, as such, also satisfies the first prong of Listing 12.05C.

## Remand

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). However, a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

A remand for an award of benefits requires a determination that: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further administrative proceedings would serve no useful purpose, including consideration of whether there are "'outstanding issues'" that must be resolved before a disability determination can be made; and (3) "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d

995, 1020-21 (9th Cir. 2014), and *Treichler*, 775 F.3d at 1105)). Even then, the Court retains flexibility in determining the proper remedy and may remand for further proceedings "'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id.* (quoting *Garrison*, 759 F.3d at 1021). If the record is "uncertain and ambiguous," the matter is properly remanded for further proceedings. *Treichler*, 775 F.3d at 1105.

The Commissioner, as stated above, maintains the need for further administrative proceedings to allow for further development in relation to the first prong of listing 12.05C, including consideration of plaintiff's education and work history. As explained by the Commissioner, if remanded for further proceedings, the Appeals Council would direct the ALJ to further develop the record and obtain all available documents related to plaintiff's education and work history; reassess whether plaintiff meets or equals the intellectual disability listing; obtain a psychological expert, as needed; conduct the remainder of the sequential evaluation process, as applicable; and issue a new decision. In identifying outstanding issues that must be resolved before a determination of disability can be made, the Commissioner states: "In particular, the fact that Plaintiff has been able to work at [SGA] levels suggests that careful development is necessary before Plaintiff can be declared disabled based on an alleged lack of intellectual capacity dating to childhood." (*Id.* at 4.)

The Court does not find further development on the question of plaintiff's functioning during the developmental period, including education-related evidence, necessary in order to determine he satisfies the requirements of Listing 12.05C.[5] Nor, for the reasons set forth below,

---

[5] Having found as such, the Court also finds no basis for considering whether or not plaintiff would meet the requirements of revised Listing 12.05. *See supra* n.3.

does the Court find plaintiff's work history, including current work activity, to necessitate further proceedings.

Again, a determination of disability pursuant to Listing 12.05C does not require consideration of a claimant's current functioning. Where a claimant meets the listing requirements, evidence of work activity in the years subsequent to the developmental period and even current work activity does not preclude an award of benefits. *See Evans*, C13-5436-RAJ-MAT (Dkt. 27 at 11) ("The unique structure of Listing 12.05C — which allows a claimant to be found per se disabled without 'having to demonstrate a disabling, or even severe, level of mental functioning impairment' . . . leads to a curious result in this case, where Plaintiff has worked for many years, and is presumably working at this time.") (quoting *Gomez*, 695 F. Supp. 2d at 1057). *See also Maresh*, 438 F.3d at 901 (evidence of work activity did not preclude an award of benefits to a claimant: "[T]he issue is not whether the claimant can perform gainful activity[.] . . . Because [the claimant] meets Listing 12.05C, he is entitled to benefits.") *But see Sorter v. Astrue*, No. 09-16626, 2010 U.S. App. LEXIS 15170 at *2-3 (9th Cir. Jul. 22, 2010) (finding evidence arguably sufficient to satisfy 12.05C, including placement in special education classes throughout school years, but remanding for further proceedings given other evidence, including: physician's assessment of borderline intellectual functioning and otherwise mild difficulties; work history post-age 22; vagueness of evidence about history in special education classes; and objective medical evidence that back injury imposed only moderate physical limitations on activities). In this case, the evidence of work activity is further notable in consisting of a single, simplistic job, performed with only limited success. As currently performed, the work is part-time, intermittent, and, as found by the ALJ, not SGA.

The Court concludes the ALJ failed to provide legally sufficient reasons for rejecting

evidence, that there are no outstanding issues to resolve and further administrative proceedings would serve no useful purpose, and, considering the improperly discredited evidence as true, the ALJ would be required to find plaintiff disabled on remand. This matter is, as such, properly remanded for an award of benefits.

## CONCLUSION

This matter should be REMANDED for an award of benefits.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 28, 2017**.

DATED this 13th day of April, 2017.

Mary Alice Theiler
United States Magistrate Judge